DENNISON R. BURNHAM v. JAMES McQUESTEN.

The statute of July 14, 1855, sec. 27, does not subject the finding of the judge, who tries a cause, upon matters of fact, to revision by the whole court, but such revision is confined to matters of law.

The use of a way for more than twenty years over ground in front of an academy building, which was thrown open as a common, with occasional repairs upon it and the filling up of gullies, does not, as matter of law, establish a right by prescription.

Where such land was thrown open as a common, and after twenty years' user the owner built a fence across the way, with a gate at that point, and informed the person using it that it was done to prevent such use, in reply to which no right of way was asserted, it was *held* that it was competent for a jury to find that such user was permissive and not adverse.

TRESPASS, for breaking and entering the plaintiff's close in Plymouth,

bounded north by the homestead of the defendant, east by the Main street leading northerly from Plymouth village to Baker's River, southerly by the highway leading from said Main street along the northerly side of land belonging to the county of Grafton, westerly by land occupied by John T. Cutter. The writ was dated Nov. 5, 1866.

Plea, the general issue, with a statement justifying under a right of way appurtenant to land of the defendant, bounded northerly by land of Ephraim Cook and Isaac Morrill, easterly by the said Main street, southerly by the plaintiff's said close, westerly by land of John T. Cutter, Robert Mitchell, and Samuel C. Webster, claiming the right of way, first, by prescription, second, by grant under a lost deed.

The cause was tried by the court.

The plaintiff claimed title under the following conveyances :

*Deed*, William Webster to the Holmes Plymouth Academy, conveying the plaintiff's land, dated August 24, 1822.

*The levy of an execution, William W. Russell* v. *The Holmes Plymouth Academy*, October 25, 1845. In the foregoing levy and deed there was no mention of any right of way.

*Deed*, William W. Russell to James H. Shepherd, dated July 10, 1852, containing the following exception, "excepting any right of way, if any, James McQuesten may have, over said land."

*Mortgage*, James H. Shepherd to the Suffolk Mutual Loan and Accumulating Fund Association, dated July 10, 1852, with the same exception.

*Quitclaim Deed*, The Loan Association to Dennison R. Burnham, dated Feb. 5, 1861.

*Assignment*, The Loan Association to Dennison R. Burnham, of the mortgage and a judgment recovered on it, dated Feb. 5, 1861.

*Service of Writ of Possession, The Loan Association* v. *James H. Shepherd*, June 24, 1858.

*Act* incorporating the Holmes Plymouth Academy, with power to hold land, in 1808.

The defendant claimed title to his land under a deed from William Webster to Nathaniel P. Rogers, dated Nov. 25, 1824, and a deed from Rogers to himself, dated Feb. 13, 1839.

The following facts were proved on trial. The plaintiff's land has on it the *Plymouth Academy*, and the defendant's land has on it his dwelling-house and the buildings connected with it. William Webster formerly owned both tracts of land, and also all the land on the westerly side of the Main street extending southerly to the road leading westerly from Plymouth Village, now having on it the Court House, the Congregational Meeting House, Leverett & Blair's office and Russell's store. When Webster owned this land it was separated from the Main street by a post and rail fence. Before Webster sold to the Academy in 1822, he had sold the land to the south of it, and the purchasers had removed the fence on the street and laid out the land on the street as common land. When the Academy purchased, they laid their land out in common with the land of the former purchasers. At the time when Webster sold to Rogers in 1824, the Academy lot, then lying common, was

separated from the remainder of Webster's land then sold to Rogers, by a post and rail fence.

The plaintiff's and the defendant's lots are both rectangular, or nearly so, and each measures sixteen rods deep from the Main street. The plaintiff's lot is nine rods on that street, and the defendant's twenty-eight rods. Soon after the purchase by the Academy and before the sale to Rogers, the Academy was built, which was rebuilt and enlarged in 1834 or 1835. The Academy building is about equally distant from the north and from the south line of the lot, and the defendant's buildings are also about equally distant from his north and south lines. The front of the Academy building is about one hundred feet distant from the Main street, and the front of the defendant's buildings about the same distance from that street, and they extend back nearly to the back line of his land. The main part of his house is about forty-two feet deep from the front next the street, and the principal entrance is by the door at the back part of the main house. There is a door in front of the house and a small gate in the fence on the Main street, from which a path leads to the front door; but this small gate and the front door are seldom used. There is no large gate, nor any entrance for carriages from the Main street, nor has there been since the house was built by Mr. Rogers.

Mr. Rogers erected the house and most, if not all, the defendant's buildings in 1825. At that time there was a length of *let down* bars in the fence between his land and that of the Academy, which Mr. Webster had used in going to the land afterwards sold to Rogers. Mr. Rogers drew in the materials for his buildings over the Academy lot through these bars, and he leveled off and prepared the land over which he drew the materials so as to make it a convenient way for that purpose. Mr. Rogers used this gate and traveled across the Academy lot to it, on foot and with carriages, while he owned the defendant's land, entering on the Academy lot at the south-east corner of it by the same way that was used by the Academy, as far as they had occasion to use it, which was perhaps three or four rods, and then continuing on to his gate. This way was distinctly marked by wheel tracks and the path of the horse, but excepting this, it was left level and was not wrought, ridged, or ditched, so as to cause any interruption or inconvenience in the use of the land by the Academy. The length of this way on the Academy lot was about ten or eleven rods, and it continued about the same distance over the defendant's land to his house. It crosses the line between these parties about ninety-four feet from the Main street. While the land of the Academy lay common, this way touched and crossed a little of the Court House lot where the way entered at the south-east corner, and was so used till the fence was built as is stated hereinafter, and excepting the change made when this lot was fenced the way has always been used in the same place and course from the time when Mr. Rogers began to use it. While the Academy lot remained common, people entered and crossed it as they pleased; there were foot-paths on it in different directions, but no marked way for carriages except that used by Rogers, and the defendant after his purchase.

In 1853, after Shepherd purchased, he fenced the Academy lot by a fence on the street and on the line of the Court House lot, and made a gate for a carriage entrance to the Academy lot on the street and not on the Court House lot, and since that time those who used the way claimed by the defendant, instead of entering at and across the corner of the Court House lot, entered from Main street, through the gate made by Shepherd, and this caused a small change in the line of the way at that place.   Since the purchase by Burnham, a highway twenty feet wide has been laid out on lands of the plaintiff adjoining the line of the Court House lot, and since that the gate on the main highway has been closed and instead of it a gate made in the fence on the southerly side of the plaintiff's land opening into the new highway.   This gate is about twenty feet from the main highway as the fence now stands, and the entrance to the Academy lot is by this gate, and the way used by the defendant leads to it and through it.

About 1834, the "*Boarding House*" was built, and after that and before the highway on the hill was opened, those who had occasion to go to the boarding house with carriages, were accustomed to enter on the academy lot by the way used by the defendant and Rogers and pass round sometimes on the south of the academy, and more seldom on the north of it, to the premises occupied by the boarding house.

In 1853, Shepherd, then the owner of the plaintiff's land, fenced it in by a fence on the street and on the line of the Court House lot, and while building the fence, said that he did it to exclude the people generally from the lot.   While he was putting up the gate before mentioned, the defendant objected, and told him that the gate was an obstacle to the travel that had usually been over the lot, and would be a source of a great deal of trouble for him to open and shut.   Shepherd then told him that was his purpose, to obstruct that travel and prevent the use of the lot for any other use than that of the school.   It did not appear that McQuesten made any reply to this.   The gate was maintained after this, and McQuesten has continued to use the way as before, except that it has been subject to the gate on the Main street, and afterwards to the gate on the new street.

Since McQuesten has owned his land he has from time to time done a small amount of work on this way in clearing off the grass, and has put on it a little gravel, but the amount of work done and the sum expended has been trifling.   If this way should be stopped the defendant would be obliged to make a way to his house from the Main street, which would not be so convenient as that over the plaintiff's land ; but he might make a convenient way without difficulty or large expense, from the Main street at his south-east corner to strike the way he now uses about half the distance between the line of the plaintiff's land and the defendant's house.   If the defendant's right to the way he claims, should be established, it will seriously reduce the value of the plaintiff's land for any use which requires exclusive possession.

The plaintiff took the ground that for a large part of the time while Mr. Rogers used this road he was a trustee of the Academy, and therefore could not legally obtain a right to the way by adverse user.

To prove that he was a trustee, the plaintiff showed that the records

of the Academy had been destroyed by fire, and introduced the testimony of William W. Russell, who testified that he was himself a trustee from 1835 or 1836 till the Academy closed; that Rogers was a trustee and remained connected with the board from 1835 or 1836 till 1839. He also testified that Rogers was a trustee, as he understood, for a number of years before in the old board; that he had in those former years seen notices for meetings of the trustees signed by Mr. Rogers, with whose handwriting he was acquainted, as secretary of the board.

George Punchard testified that he was a trustee from 1834 or 1835; that he thought Mr. Rogers was a trustee up to 1838 or 1840. Printed catalogues for the years 1838, 1839, were produced, proved to have been used by the school, having Mr. Rogers' name on them as trustee. F. W. A. Robie testified that he was a pupil in 1827, and had formerly a catalogue of that year, now lost, which had Mr. Rogers' name on it as a trustee. The defendant excepted to this evidence as incompetent to prove that Mr. Rogers was a trustee. The evidence was admitted subject to the exception, and on the evidence the court find that Mr. Rogers was a trustee of the academy in 1827, and in 1835, and from that year till he sold to the defendant in 1839.

There was no evidence of any communication, written or oral, between the owners of the two lots on the subject of this way until that before stated between McQuesten and Shepherd in 1853, when the fence was built and the gate erected.

For the purposes of this hearing the court hold that the fact of Mr. Rogers' being a trustee of the Academy, without personal interest in the property of the corporation, would not in law prevent him from acquiring a right to this way by adverse user, and the evidence on that point is laid out of the inquiry.

The land of the plaintiff and the "Academy building" have been used for the school kept in the building, with some occasional interruptions; and there was no evidence that any other use was made of the land or buildings until after possession was taken by the Loan Association in 1857. The use which Mr. Rogers and the defendant made of this way while the land lay common, caused no damage or inconvenience to the owners of the plaintiff's land. The plaintiff contended that, as this land was used for a school or academy and was left common for the convenience of the school and the owners of the land, the owners of the defendant's land could not in law acquire a right to the way by user; that the user would in law be permissive and not adverse. But the court for the purposes of this trial held otherwise, and that the circumstance that the land was left common was only part of the evidence, on which the fact was to be found whether the use was adverse or permissive.

The court find that the use of the way was begun by Mr. Rogers without right, and without color or claim of right; that the use of the way by Mr. Rogers and by the defendant continued to be permissive down to the time when the fence was built and the gate erected, in 1853; and that therefore the defendant has failed to establish his right to the way by prescription.

There was no evidence of any lost deed, and the ground that the way had been granted by a lost deed was abandoned on the hearing.

The court therefore find that the defendant is guilty in manner and form as the plaintiff has alleged and assess damages in the sum of ten dollars.

*Leverett & Blair* and *Pike* for plaintiff.

*Carpenter* for defendant.

BELLOWS, J.   To establish a title by user, it is necessary to prove that the user was adverse, exclusive and uninterrupted.   It must be under a claim of right and not by license or permission of the owner. In this case the finding of the court is that the use of the way was begun by the late Nathaniel P. Rogers under whom the defendant claims, without right, and without color or claim of right, and that the use of the way by him and by the defendant continued to be permissive down to the time when the fence was built and the gate erected, in 1863, and that therefore the defendant failed to establish his right of way by prescription, and accordingly the court finds a verdict for the plaintiff.

It becomes necessary in the first place to ascertain what are the questions before us.   The defendant's counsel contends that, as by the act remodeling the judiciary, passed July 14, 1855, sec. 27, the decision of the court must be given in writing if either of the parties desire it, stating first the facts found, and then the conclusion of law upon them, which shall be filed and recorded, the finding of the judge who tries the cause as to matters of fact is subject to revision by the whole court. ·

It will be observed, however, that it is the *facts* that are to be reported and not the evidence; and also that it is provided in the same section that either party may except to the decision upon any matter of *law* arising upon such trial, or involved in such decision, in the same manner, and with the same effects, as upon a trial by jury.   It is clear, then, we think, that it was designed by this provision to subject to the revision of the whole court matters of law alone, and not the findings of the judge upon matters of fact.   Nor is there any thing in the case which denotes a purpose to reserve the questions of fact for the whole court.

The material question, then, is whether upon the evidence the finding of the court can be sustained; not whether this court on the evidence reported would now find the same way; but whether the evidence was of such character that the court must find the right of way established.

The great question was whether the use by the defendant and his grantor of this way was under a claim of right, or was permissive.   If the way was used with the assent or license of the owner, it was not adverse, and how that was, was a question of fact upon all the circumstances of the case.

The defendant showed no color of title, and as in the case where a party sets up a title to the land itself by adverse occupation, the presumption would be that the use was in subordination to the legal title until the contrary was shown.

The burden of proof was, therefore, upon the defendant to prove that the use was under a claim of right. The defendant, to make that out, relied chiefly upon the long use of the way, which was the only carriage-way to his house, and the fact that Rogers, when he drew in his materials for his house, had leveled off and prepared the land so as to make a convenient way for that purpose, and that defendant himself had, from time to time, done a small amount of work on the way in cleaning off the grass and putting on it a little gravel, although the amount of work done and the sum expended, had been trifling; and that the way was distinctly marked by wheel and horse tracks and was so when defendant purchased.

On the other hand it appeared, that, before Mr. Rogers began on his lot, an academy had been built on the lot now owned by the plaintiff, and the ground in front thrown open as a common, in connection with the land south in front of the court-house and other buildings; that this remained in common and unenclosed until 1853, and during this time people entered and crossed this lot as they pleased; that there were footpaths on it in various directions, but no marked way for carriages except that used by Rogers and the defendant.

This way was distinctly marked by wheel tracks and the path of the horse, but except that, it was left level and was not wrought, ridged or ditched, so as to cause any interruption or inconvenience in the use of the land by the academy; nor did the use of it cause any damage or inconvenience to the owner of the plaintiff's land. The case finds also that in 1853 Shepherd, who then owned the Academy lot, made a fence on the south line of his lot, on the line of the court-house lot, and on the main street, and that he made a gate upon Main street opening into the Academy lot; and while so fencing out his lot and putting up this gate, the defendant objected and told Shepherd that the gate was an obstacle to the travel that had usually been over the lot, and would be a source of a great deal of trouble for him to open and shut it; that Shepherd then told him *that* was his purpose, to obstruct that travel and prevent the use of the lot for any other use than that of the school; and it did not appear that McQuesten made any reply to this; that the gate was maintained after this, and defendant has continued to use the way as before, except that it has been subject to the gate on the main street, until a road, after plaintiff purchased in 1861, was laid out on the south line of plaintiff's lot, and then the gate was removed to the fence on that road, at or near the place where the way formerly commenced on that lot. This fence, so erected by Shepherd, extended across the way as then used, and the defendant then entered upon the Academy lot through the gate on Main street, a short distance from the original entrance, until the laying out of the new road.

From this evidence we think it was competent for a jury to find, by implication, a general license by the proprietors of the Academy to enter upon this common land for the purposes for which it was used, and the inquiry would be whether Mr. Rogers, and after him the defendant, used this way upon the strength of this implied license, or upon a claim of right. If it were to be held that in strictness this throwing open

of this land to be used in common was not a license in law, still it must bear strongly on the question whether the user was adverse or permissive.   In deciding that question much would depend upon the extent and character of the use of the way ; and more especially upon the extent of the change in the surface in working it.   Inasmuch as the making of a substantial and permanent road with proper grading and ditches would be much more significant of a claim of right, than the mere passing over the natural surface in the track made by the horse and carriage alone, and at the same time would be better notice to the owners of the land.

In this case the natural surface of the ground does not appear to have been changed ; and although the way was long used by the defendant and his grantor without interruption, we think there is nothing in the case that would warrant us in saying that the court could not properly find that the defendant had failed to establish a prescription.

From the evidence in the case we think it quite clear that the court would not have been justified in deciding, as matter of law, that the use of the way was under a claim of right.   On the contrary, in the case of *Kilburn* v. *Adams*, 7 Mass. 33, which was very much like this, the plaintiff who had sued for obstructing his way was nonsuited subject to the opinion of the whole court, which directed judgment on the nonsuit.   Here the way in question was over an academy lot designedly left unenclosed as a common, and the court, Shaw, C. J., held the rule to be " that where a tract of land attached to a public building, such as a meeting-house, town-house, school-house and the like, and occupied with such house, is designedly left open and unenclosed for convenience or ornament, the passage of persons over it, in common with those for whose use it is appropriated, is, in general, to be regarded as permissive and under an implied license, and not adverse ; and such a use is not inconsistent with the only use which the proprietors think fit to make of it.   And though an adjacent proprietor may make such use of the land more frequently than another, yet the same rule will apply, unless there be some decisive act indicating a separate and exclusive use under a claim of right.   A regularly formed and wrought way across the ground, paved, macadamized, or gravelled, and fitted for use as a way from his own estate to the highway, indicating a use distinct from any use to be made of it by the proprietors, would in our opinion be evidence of such exclusive use and claim of right ; so would be any plain, unequivocal act, indicating a peculiar and exclusive claim, open and ostensible, and distinguishable from that of others.   But the fact that a particular track or line was a little more worn and marked by travel than the general surface of the lot, or that the adjacent proprietor had occasionally leveled a spot gullied by the rain, could scarcely be regarded as indicative of a claim of right."

The evidence in fact tended to prove that there was a way across this lot over which the plaintiff used to drive his team and carriages to his house and store ; that he repaired it in several places, carting gravel on to it where it had been gullied, and repairing it at different times so he could pass over it with a horse and chaise.

The difference between the two cases is not very material; the most important is in the duration of the use, it being much longer in the case before us than in the other; but we think the case a strong authority against holding as matter of law in the present case, that a right of way is made out, or that a jury could not properly find that the use was permissive and not adverse.   To prove the use to be adverse, it is not sufficient to show an intention alone to claim it as of right, but that intention must be made manifest by acts of such clear and unequivocal character that notice to the owner of the claim might reasonably be inferred; and it is very apparent that a user, which in ordinary cases would indicate a claim of right and furnish reasonable evidence of notice to the owner, might wholly fail to furnish such indication where the land was laid in common under such circumstances as to be an implied license to all persons to pass over it.   Whether in the individual case such acts are shown as do or or do not indicate a claim of right must ordinarily be a question of fact for the jury; and this case, we think, furnishes no exception.

It has been urged that the finding of the court is against the weight of the evidence, but to this the views already suggested are, as we think, a sufficient answer.   The motion upon this ground stands upon the same footing as if there had been a verdict of the jury, and there is nothing, we think, to bring it within the principle of the decided cases upon that subject.   *Clark* v. *Congregational Society*, 45 N. H. 331, and the authorities cited.   On this point it is to be considered that when Shepherd closed up the way by building a fence across it and opening a gate on Main street, the defendant was present and objected to it; saying that the gate was an obstacle to the travel that had usually been over the lot, and would be a source of a great deal of trouble for him to open and shut.   But upon Shepherd's telling him *that* was his purpose, to obstruct that travel and prevent the use of the lot for any other purpose than that of the school, the defendant set up no right of way in himself, and in fact made no reply at all.   Here Shepherd had closed up the way by a fence across it, and told the defendant expressly that he did it to stop the travel across it, in substance; and this naturally called upon the defendant to assert his claim to the way, if he understood it existed.   His silence upon that subject at a time when an assertion of his right might have been expected was for the jury to weigh.   It was in the *nature* of an assertion that he claimed no such right of way, although, of course, of much less significance; and yet, nothwithstanding the defendant continued to use the way though subject to the gate, we think a jury might very properly have considered the want of any assertion of a right to the way.

It is urged also that certain facts stated in the case relating to the making of another way to the defendant's house and the damage to the plaintiff's land ought not to have been considered.   We think, however, that these facts must be treated as properly in the case as it now stands; and we are not aware of any objection to their having been considered, even if the evidence in respect to them had been derived mainly, or even wholly, from a view taken at request of the parties, as

suggested by defendant's counsel. The fact that Mr. Rogers was one of the trustees of the Academy while using this way was laid out of the case by the judge who tried it and has not been considered by us, although, as held in *Kilburn* v. *Adams*, before cited, it might properly have been entitled to some weight on the question of fact whether he used the way under a claim of right.

With these views there must be

*Judgment on the verdict.*